Verlien W. ROSIN, Special Administratrix of the Estate of Edward W. Rosin, Deceased, Appellant,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Appellee.

No. 20706.

United States Court of Appeals
Ninth Circuit.

May 29, 1967.

Ronald G. Carter, Boise, Idaho, for appellant.

Sylvan A. Jeppesen, U. S. Atty., Jay F. Bates, Asst. U. S. Atty., Boise, Idaho, John W. Douglas, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, HAMLEY and CECIL,* Circuit Judges.

CECIL, Senior Circuit Judge.

Edward W. Rosin in whose name this appeal was filed, as appellant, died during the pendency of the appeal and his widow, Verlien Rosin, duly appointed as special administratrix of the estate of Edward W. Rosin, was substituted as party appellant.

The appeal is from an order of the United States District Court for the District of Idaho affirming the decision of the Secretary of Health, Education and Welfare (Appellee herein) denying the appellant, Edward W. Rosin, benefits under the Social Security Act (Sections 401 et seq., Title 42, U.S.C.). The appellant filed an application on April 3, 1962, with the Social Security Administration, Department of Health, Education and Welfare, in which he alleged that he became unable to work on July 2, 1957, due to a "stroke". He sought to establish a period of disability and to obtain an award of disability insurance benefits (Sections 416(i) and 423, Title 42, U.S.C.). Upon denial of his application by the Appeals Council (20 C.F.R., 404.951) the appellant brought this action for judicial review in the District Court (Sec. 405(g), Title 42, U.S.C.).

Initially, the District Court remanded the case to the Appeals Council for the

---

* Lester L. Cecil, Senior Circuit Judge of the Sixth Circuit, sitting by designation.

purpose of taking additional evidence on the question of whether the appellant could engage in a substantial gainful activity and if so, whether such employment was available to him. Upon remand the final conclusion of the Appeals Council based upon the findings of the hearing examiner [1] was, "Inasmuch as the Appeals Council agrees with the hearing examiner's finding that the claimant's work during the period in issue and thereafter amounted to substantial gainful activity which constitutes a complete bar to benefits as far as the application in issue is concerned, it is unnecessary to discuss further the claimant's ability, theoretical or otherwise, to engage in other vocational pursuits."

The review by the District Court is limited to an examination of the administrative record to ascertain if there is substantial evidence to support the ruling of the Secretary. If there is, his decision must be affirmed. (Sec. 405(g), Title 42, U.S.C.). Originally, the court was of the opinion that the appellant could not gainfully carry on his profession as a Doctor of Chiropractic. On consideration of additional evidence, after remand, the court found that there was substantial evidence to support the finding of the Appeals Council that the appellant's ability to continue his practice to a limited extent amounted to substantial gainful activity. The court also found that he was "qualified and physically able to engage in other work which would amount to substantial gainful activity and that" such work was readily available. The court sustained the motion of the appellee for summary judgment and entered judgment accordingly. This appeal followed.

■ This Court has jurisdiction of the appeal under Section 1291, Title 28, U.S.C., and Section 405(g), Title 42, U.S.C. The appellant first became eligible to apply for benefits under the Social Security Act in September of 1960. Admittedly he met the legal requirements to make application for a period of disability and for an award of disability insurance benefits during the entire period of the pendency of his application.[2] The question before us is whether the findings of the Secretary based on

1. "Accordingly, the Hearing Examiner finds that:
   (1) The claimant was a duly licensed and practicing Doctor of Chiropractic under the laws of the State of Idaho at all times within the effective date of the application of April 3, 1962.
   (2) In June 1957 the claimant did suffer a 'stroke' which is a medically determinable condition expected to be of indefinite duration.
   (3) Impairments to the claimant's left arm and leg did result therefrom which do constitute a considerable handicap.
   (4) In spite of the resulting handicap the claimant did continue the practice of his profession as a Doctor of Chiropractic.
   (5) This practice of his profession did constitute a *substantial gainful activity* under the provisions of the Social Security Act and the Regulations and without which the claimant could not have qualified even for entitlement to a disability determination.
   (6) Up until the last effective date of the application herein there had been no major deterioration in the claimant's physical or mental condition of a sufficient degree to prevent his continuance in the practice of his chosen profession—or other substantial gainful activities for which he was qualified considering his age, education, training, experience, and qualifications with full consideration of his handicap, (Exhibit AC-2).
   (7) Numerous types of jobs do exist in the national economy and in the economy of the area where the claimant lives if he desired to give up his profession or to engage in the practice on a limited basis or as an employee.
   Accordingly, the Hearing Examiner finds that the evidence of record does not establish that the claimant was under a 'disability' as defined in the Social Security Act at any time for which his application of April 3, 1962 was effective."

2. The appellant was granted disability insurance benefits, effective in March, 1964, as a result of a new application of July 2, 1965. (Appellee's brief.) The appellant died during the week of August 29, 1966, following a long illness as a result of his stroke. (Letter of September 7th from counsel for appellant.)

the findings of the hearing examiner are supported by substantial evidence. Galli v. Celebrezze, 9 Cir., 339 F.2d 924; McMullen v. Celebrezze, 9 Cir., 335 F.2d 811, cert. den. 382 U.S. 854, rehearing den. 382 U.S. 922, 86 S.Ct. 295, 15 L. Ed.2d 238.

The appellant was born on October 14, 1920, and was therefore thirty-six years old when he suffered the stroke in July, 1957, and thirty-nine years old when he first became eligible for disability benefits in September, 1960. After being graduated from high school, the appellant completed two years of a premedical course of studies at Pacific University, Forest Grove, Oregon. He served in the Air Force from February 24, 1943, to December 18, 1945. Upon discharge from the Air Force, he attended the Western State College of Chiropractic Physicians in Portland, Oregon, from where he was graduated in 1948. In 1949 he opened an office in association with another chiropractor and in 1950 opened his own office in Payette, Idaho. The appellant was married, and had three minor children.

At the time the appellant's disability began he was practicing his profession in Payette, Idaho. On July 2, 1957, the appellant became weak and dizzy at his office and developed a headache. He managed to drive his car home from his office. Arriving at home, he found he had no use of his left hand when he attempted to lift a sprinkler. He fell on the steps at his home. Dr. Watts was called and the appellant was hospitalized at the Holy Rosary Hospital, at Ontario, Oregon. On July 12th he was transferred to the Veterans' Administration Hospital at Boise, Idaho, where he remained until he was discharged in December, 1957. The diagnosis at the Veterans' Administration Hospital was "Cerebral Thrombosis of the right middle cerebral artery due to arteriosclerosis with almost complete paralysis of the left arm, weakness of the left leg."

The medical evidence assessing the physical condition of the appellant is not in conflict. Four medical reports, prepared by three doctors, were received in evidence by the hearing examiner. Two were by appellant's personal physician, Dr. Thomas W. Watts, Jr., a general practitioner and are dated May 21, 1960, and April 10, 1962. One was submitted by a neurological surgeon, Dr. L. Stanley Durkin, who examined the appellant on September 29, 1958,[3] and the fourth by Dr. Augustus M. Tanaka, who examined the appellant on February 9, 1963, at the request of the Social Security Administration. All three doctors agreed that the appellant was severely handicapped. The stroke which the appellant suffered on July 2, 1957, affected the left side of his body. His facial muscles on the left side showed a slight weakness. He had no use of his left arm, being unable to move his fingers and wrist, and being able to move his shoulder and elbow only slightly. Both Doctors Watts and Tanaka considered the appellant to have a complete and total loss of function of the left arm. Appellant had a stiffness of hip and poor coordination in that part of the body. He also had a spastic leg which prevented him from walking without a marked limp. His personal physician stated that he had a twenty-five percent loss of strength of the muscles of his left leg. Dr. Tanaka stated that although the appellant is able to walk he has a very definite disability and that enforced walking undoubtedly contributed to his pain and discomfort. Appellant suffered from paroxysms of muscular pain, spasms and hyperesthesia of the entire left side. The appellant was under medication for the prevention of these spasms and to reduce the spasticity of his left leg. These muscle spasms were often brought on by overexertion and too much muscular effort. Another effect of such increased activity was extreme fatiguability. The appellant experienced a tightness of his left diaphragm which caused him to have dif- 

3. Dr. Durkin expressed no opinion about the extent of the appellant's disability or its effect on his ability to engage in substantial gainful activity.

ficulty in breathing. The extensive physiotherapy which the appellant had undergone proved to be of little or no help in alleviating his condition. Doctor Watts and Doctor Tanaka concluded that the appellant was unable to carry on his business as a chiropractor. Dr. Watts considered the appellant as seventy-five percent disabled at anything requiring more than mental accuity. Dr. Tanaka concluded that the appellant's disabilities constituted a very definite limitation on his ability to practice chiropractic and recommended favorable consideration of his application for disability benefits.

On June 28, 1960, the appellant was again admitted to the Veteran's Administration Hospital following a seizure of convulsive movements of the left arm, accompanied by salivation and momentary unconsciousness. He was released from the hospital on July 1, 1960, with no apparent increase in his disability.

Subsequent to his stroke on July 2, 1957, the appellant remodeled his garage, at his home, into an office in which he could continue his practice of chiropractic. In late 1958, the appellant resumed part of his practice. In order for him to continue his practice it was necessary for him to utilize the services of his wife. She acted as his office secretary and assistant. She met the patients, interviewed them and took their history. She then presented this information to the appellant who reviewed the cases, and conducted additional inquiries, if necessary. He would then make his own analysis and recommendations. If he felt that treatment could be administered in his office, he would instruct his wife in the operation of the necessary machine and she would perform the treatment. Appellant's wife received no remuneration for her services. He was unable to perform any of the manipulative adjustments that are an essential part of the practice of chiropractic. When the appellant's wife took another job for a period of about three months, he attempted to operate the office by himself. He was unable to operate any of the machines which required the use of two hands. The heat lamp, though easy to operate, necessitated moving at each use. This the appellant found extremely difficult to do. Dr. Kenneth Yaguchi, another chiropractor, stated in an affidavit dated September 1, 1964, that the appellant had referred about thirty patients to him since the time of his initial stroke.

The appellant's case load dwindled from an average of two to three a day in late 1960 to minus one per day in 1962.[4] The appellant would receive his patients in the morning. He stated that he would then spend the afternoon resting from the strain of the visits of his patients. He tired very easily and found it increasingly difficult to see patients. The appellant's income from his chiro-

4. The appellant's office records reveal the following number of appointments during the years 1960, 1961 and 1962:

| Month | 1960 | 1961 | 1962 |
|---|---|---|---|
| January | 95 | 41 | 25 |
| February | 40 | 77 | 5 |
| March | 31 | 62 | 0 |
| April | 60 | 46 | 0 |
| May | 55 | 71 | 0 |
| June | 54 | 61 | 0 |
| July | 2 | 35 | 12 |
| August | 78 | 0 | 75 |
| September | 70 | 6 | 30 |
| October | 79 | 12 | 18 |
| November | 81 | 0 | 0 |
| December | 34 | 0 | 0 |

No records were kept for 1963 and thereafter.

practic practice during the period 1957 to 1963 is reflected in the following table:

| Year | Gross Income | Net Income |
|------|-------------|-----------|
| 1957 | $3187.94 | $ 830.65 |
| 1958 | 2631.45 | 543.41 |
| 1959 | 4367.32 | 1532.53 |
| 1960 | 3191.19 | 995.21 |
| 1961 | 4209.70 | 1601.49 |
| 1962 | 3817.24 | 1905.47 |
| 1963 | 2847.91 | 1078.88 |

It must be remembered that during these years the appellant's wife assisted him in his work, and that she received no remuneration for her services. From these facts the hearing examiner and the Appeals Council concluded that the appellant was engaged in substantial gainful activity, and thereby denied his claim for disability benefits.

In order to qualify for disability benefits, the claimant must be unable "to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." (Emphasis added.) Sections 416(i) (1) and 423(c) (2), Title 42, U.S.C. As these sections state, "An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." See also, Mark v. Celebrezze, 9 Cir., 348 F.2d 289; Seitz v. Secretary of Social Security Administration, etc., 9 Cir., 317 F.2d 743. The Secretary has promulgated several regulations creating presumptions concerning the conditions under which one is said to be engaged in substantial gainful activity.

"Supervisory, managerial, advisory or other significant personal services rendered by a self-employed individual generally demonstrate an ability to engage in substantial gainful activity." 20 CFR 404.1532(e).

"An individual's earnings from work activities averaging in excess of $100 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity in the absence of evidence to the contrary." 20 CFR 404.1534(b).

The Secretary contends that the evidence of the appellant's earnings and the number of patients he received demonstrates that the appellant both physically and financially engaged in substantial gainful activity. This contention ignores the fact any income received was due only to the fact that his wife was able to and did assist him in the performance of his services. Without her presence he would not have been able to operate the machines. As it was he could not perform any manipulative services. There was uncontradicted testimony that had the appellant paid his wife a salary or hired a stranger-employee, he would not have made any profit, but would have sustained a loss. The appellant attempted to make a living at the only profession he was qualified to engage in, and should not be penalized because the small profit he made was due to the fact that he was assisted by his wife, who received no compensation for her services. The uncontradicted medical evidence was to the effect that the appellant was unable to function as a chiropractor. He was only able to see a very small number of patients a day. Furthermore he was forced to refer a good number of patients to another chiropractor in a nearby community.

Considering the medical testimony, and the uncontradicted testimony that he was assisted by his wife without compensation, that if he paid his wife or hired an assistant he would have lost money, that he worked few hours a day because he had to rest the remainder of the day, that he saw fewer and fewer patients each day and that he was unable to perform the basic services of a chiropractor by himself because of his severe disabilities, we conclude that the findings of the Secretary are not supported by substantial evidence. We further find that the evidence demonstrates that the appellant has proven that he could not gainfully continue his former practice of chiropractic.

The District Court further found that "the plaintiff is qualified and physically able to engage in other work which would amount to substantial gainful activity and that this work is readily available." We find that there is no substantial evidence in the record to support this finding.

To satisfy the statutory requirement that a claimant be unable to engage in any substantial gainful activity, it is not necessary that he introduce evidence which negatives every imaginable job open to men with his impairment, age, experience and education. Hayes v. Celebrezze, 5 Cir., 311 F.2d 648; Rice v. Celebrezze, 6 Cir., 315 F.2d 7; Celebrezze v. Warren, 10 Cir., 339 F.2d 833; Cuthrell v. Celebrezze, 4 Cir., 330 F.2d 48. All that is required of the claimant is that he be unable to do the type of work that he was formerly engaged in and demonstrates his lack of particular experience for any other type of work. Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707; Dupkunis v. Celebrezze, 3 Cir., 323 F.2d 380; Torres v. Celebrezze, 1 Cir., 349 F.2d 342. Once the claimant has demonstrated that he can no longer engage in his former occupation, it is incumbent on the Secretary to show that there are other types of work which the claimant is capable of doing. McMullen v. Celebrezze, supra; Torres v. Celebrezze, supra; Thompson v. Celebrezze, 6 Cir., 334 F.2d 412; Carden v. Gardner, 6 Cir., 352 F.2d 51. Such proof must not be based on the claimant's mere theoretical ability to do some kind of work, but must be based on practical and realistic considerations, such as education, experience, emotional and physical condition and reasonable job opportunities available within the area in which claimant lived. Kerner v. Flemming, 2 Cir., 283 F.2d 916; Dupkunis v. Celebrezze, supra; Ribicoff v. Hughes, 8 Cir., 295 F.2d 833; Celebrezze v. Bolas, 8 Cir., 316 F.2d 498; Henninger v. Celebrezze, 6 Cir., 349 F.2d 808.

"It is the duty of the Secretary to protect the public funds from malingerers; but where, as here, the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing some one of the 'nonphysical, observational' jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation. Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant." Thomas v. Celebrezze, 4 Cir., 331 F.2d 541.

The evidence on the issue of whether appellant was qualified and able to engage in other substantial gainful activity consisted primarily of the testimony of George E. Denman, a Vocational Consultant under contract to the Bureau of Hearings and Appeals, Social Security Administration. Mr. Denman testified that in his opinion, the physical disabilities of the appellant prevented him from engaging in the practice of chiropractic. Mr. Denman did suggest various other fields in which he believed the appellant could obtain employment. However, all of these recommendations had serious and definite qualifications and limitations. Mr. Denman thought that the appellant could become a high school teacher, especially of biological subjects. However, the appellant would have to pass a physical examination. Although there were other handicapped teachers employed in Idaho, the vocational consultant was not certain that the appellant could meet the physical requirements. In addition he testified that although some handicapped persons were hired as teachers, they were not always rehired for a second year. The most difficult obstacle, however, that the appellant would have to overcome would be the mental and physical stamina required of a teacher. Being a teacher involves a minimum of five days a week, six hours a day. Mr. Denman could not testify positively that the appellant could stand the strain of such a job.

Mr. Denman next suggested the possibility that appellant could sell insurance. However this occupation requires that the person so engaged be able to drive an automobile. The appellant could not obtain automobile insurance because of his disabilities. Mr. Denman recognized that the appellant had a serious limitation in this respect.

Another possible avenue of employment, suggested by the vocational consultant, was a position of bookkeeper or clerk. Because of the appellant's paralysis of his left arm, Mr. Denman agreed that the appellant could not operate any of the many bookkeeping machines.

"CONSULTANT: I am not thinking of bookkeeping machines alone. I am thinking more, now of management, answer telephones, keep records and that sort of thing. Telephone calls, wait on people who might come in——, because there are a great many people employed in that kind of work, office work, office clerk or office manager. *Again the limiting factor there, might be question of whether or not if he could stand on his feet.* (Emphasis added.)

"ATTORNEY: Cope with it day after day, I think——.

"CONSULTANT: My overall question is, on any kind of employment, is limited by the statement that he makes and appreciates 2 hours of work and then he gets tired and worn out, and if it would call for 6 or 8 hours of work daily, 5 days a week.

"ATTORNEY: Five days a week?

"CONSULTANT: *It is too much.*" (Emphasis added.)

Mr. Denman testified that in considering whether a person is able to obtain employment, such person must be able to work six or eight hours a day. Mr. Denman had grave doubts as to whether the appellant could work such a schedule.

"EXAMINER: * * * What can this man reasonably be expected to do?

"CONSULTANT: Without his——, when his mental situation is cleared, there are quite a number of fields that he could do.

"EXAMINER: What are they?

"CONSULTANT: Teaching, office work, salesmanship, clerk in a store. *If he can physically take it.* (Emphasis added.)

"ATTORNEY: This is the question, the question is can he take it.

"EXAMINER: If he can physically take it, that is one of the things I think, that you have got to express an opinion on, is, whether in your opinion whether he can physically take it, on the basis of the medical evidence.

"CONSULTANT: *Physically, I don't think he can take it,* * * *. (Emphasis added.)

* * * * * *

"ATTORNEY: Am I to understand that you assume he could carry a 6 to 8 hour day 5 days a week.

"CONSULTANT: That is a medical problem I can't——.

"EXAMINER: I think we are back where we started.

"(SHORT RECESS)

"EXAMINER: Mr. Denman, I assume from what you have said, that your conclusion is that Mr. Rosin has the mental ability and the training and the background to handle the jobs which you have spoken of. *You do not intend to conclude that he is physically capable of meeting the demands of those jobs.* (Emphasis added.)

"CONSULTANT: *That is correct.* (Emphasis added.)

"ATTORNEY: You make the reservation of physically and mentally he might not be able to meet this work you have mentioned.

"CONSULTANT: Yes, but the final decision on that would depend upon additional evidence.

"ATTORNEY: That you have already spoken of.

"CONSULTANT: Yes. In a way of explanation and not alone, the competency from the standpoint of mental

ability is also involved, whether or not the claimant has the ability for sustained—, for a period of time than mental ability of rather an exacting nature."

Mr. Denman was very concerned about the mental ability of the appellant. He stated that it was evident that the stroke also had some effect on the appellant's mental ability. He was unable to say what this effect was, but it did raise several important questions concerning the mental qualifications of the appellant for the various jobs he suggested. He was uncertain whether the appellant could withstand long periods of sustained concentration. He also wanted to know the effect of long working hours on the accuracy and ability of the appellant. Without psychiatric testimony Mr. Denman did not feel competent to express an opinion on this subject. There was no psychiatric testimony in the record. Although there was talk of ordering one at government expense, the hearing examiner decided that one was not necessary.

No positive conclusions concerning the appellant's ability to engage in substantial gainful employment can be derived from the testimony of the Vocational Consultant, Mr. Denman. The substance of his testimony is to the effect that only if the appellant had the mental and physical stamina to work 6 or 8 hours a day would he agree that he was capable of seeking employment. However, he stated that in his opinion the appellant was not capable of working a full day. Although there were several occupations that he felt the appellant could consider, each was wrought with special problems. The most significant of these problems related to the appellant's ability to physically maintain the schedule and requirements of such a job.

Lyle B. French, Manager of the Employment Security Office for the State of Idaho, located in Payette, Idaho, stated in an affidavit of July 14, 1964, that even after physical therapy, the appellant "is still not capable of employment." He further stated, that with the assistance of the Rehabilitation Center of the Veteran's Hospital, Boise, Idaho, his office unsuccessfully tried to determine other fields of work which would be available to the appellant.

"This office frankly and sincerely believes that Mr. Rosin is not employable at the present time, due to his injuries. This office has closed out his file, over a year ago, as it was evident that after six years of effort, there was absolutely nothing that could be done to place Mr. Rosin in a job. This office serves all of Payette County, Idaho, and we have very close contact with the office in Ontario, Oregon, just across the river from us, which office has also confirmed that there is absolutely no possibility of finding employment for Mr. Rosin. We believe, through our personnel contact, that the Rehabilitation Center in Boise, Idaho, is of the same opinion."

In the spring of 1959, the appellant was given an opportunity to learn x-ray technology at a clinic in Ontario, Oregon. The doctor in charge, Dr. Charles E. Palmer,[5] stated that the appellant's "muscular weaknesses effectively prevented the performance of duties necessary to this vocation, and the trial appeared to prove he could not in the foreseeable future qualify as an x-ray technician."

Letters from two insurance agencies indicated that the appellant could not obtain automobile insurance because of his physical handicap. Thus, if he obtained a job that required either commuting or traveling he would have to have his wife or someone else drive him, or hire someone to act as his chauffeur.

■ The record in this case leads not only to the conclusion that there was no substantial evidence to support the District Court's findings, but that there is substantial evidence that the appellant satisfied the requirements necessary to receive disability benefits.

5. Dr. Palmer stated these facts in a letter of May 15, 1964, which was admitted into evidence.

Counsel for the appellant states in the conclusion of his brief that "said benefits should be granted for the wife and children also, as prayed." This is the first instance in the entire record that any request is made on behalf of the wife and children. The hearing examiner, the Appeals Council and the District Court had before them only the application of the appellant. Therefore this Court cannot consider any claim on behalf of the wife and children.

In accordance with the foregoing, the judgment of the District Court is reversed and the case is remanded to the Secretary of Health, Education and Welfore with directions that appellant be granted a period of disability and disability benefits in accordance with the Social Security Act.