Rex A. LASHBAUGH, Plaintiff,

v.

John W. GARDNER, Secretary of the Department of Health, Education, and Welfare, Defendant.

Civ. No. 67–582.

United States District Court
D. Oregon.

Aug. 30, 1968.

**1144**

Pozzi, Levin & Wilson, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Richard C. Helgeson, Asst. U. S. Atty., Portland, Or., for defendant.

## OPINION

SOLOMON, District Judge:

The Secretary of Health, Education and Welfare determined that Rex Lashbaugh (claimant) is not entitled to a period of disability under 42 U.S.C. § 416(i) or to disability benefits under 42 U.S.C. § 423. Claimant seeks review here. 42 U.S.C. § 405(g).

■■ The Secretary's determination must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The burden of proof is on the claimant. Seitz v. Secretary, etc., 317 F.2d 743 (9th Cir.1963).

Claimant was born on February 6, 1908. He was 57 years old when his application was filed on August 13, 1965. He is now 60.

Claimant was employed until April, 1965, as a longshoreman. He earned a substantial wage operating machines such as lift carriers, bulldozers, lumber carriers and locomotives. This is strenuous work, often performed outdoors and in inclement weather.

The medical evidence and the inability of the claimant to return to his former job are not in dispute.

The Examiner asked Dr. Ralph B. Reaume to testify at the hearing. He stated that claimant "has chronic bronchitis, which is a low grade chronic infection or inflammation of the bronchial tubes of the lungs. And secondary to this, I believe that he has scarring of the bronchial tubes which impair the passage of air in and out of the lung. This is called obstructive emphysema or obstructive lung disease. By history it would seem that the most likely cause is the chronic use of cigarettes." This and other medical evidence support claimant's complaints of chest pains, shortness of breath, wheezing, and passing out. Dr. Reaume testified and the Examiner found that claimant could not return to his former job.

The Examiner stated in his opinion:

"It was felt [claimant] should work indoors, primarily, where he would not be exposed to inclement weather or to harmful airborne irritants and nox-

ious fumes. He should be able to move about freely in his work and take work breaks as needed. No great degree of concentration, speed or special manipulative dexterity should be required. No intellectual demands should be made beyond the level he demonstrated at the hearing and in his previous work experience. No advance training should be required. Only sedentary work was to be considered which was devoid of anything but the slightest exertion, not exceeding the equivalent of infrequently lifting objects up to ten pounds. Rapid arm movements and a high degree of finger dexterity and similar skills would not be required."

The Examiner also said:

"[Claimant] could do light work under ideal environmental conditions, that is, in the absence of fumes and dust. It would have to be an indoor situation where there would be no rapid temperature changes especially to cold temperatures. Air conditioning would not be necessary except to remove pollutants from the air, and standard heating would be perfectly satisfactory."

Dr. Leroy R. Pierson, a vocational consultant called by the Secretary, also testified on the jobs available to a person of claimant's age and education given these conditions. His testimony is summarized in the Examiner's opinion:

"Obviously the jobs suggested by [Dr. Pierson] represented the lightest, most elemental and the poorest paid occupations. Wages range from $1.25 upward to approximately $2.25 an hour. The jobs listed by the witness included taxicab dispatching, night clerking at small hotels particularly in the older parts of town, sorting or clerking in sheltered workshops such as the Goodwill Industries, St. Vincent dePaul and Salvation Army, collating pages or folding and cutting paper in small local print shops, collecting money in booths at car washes or drive-in movie theaters, and assembling, inspecting or sorting of small parts at manufacturing firms within the Portland metropolitan area. With regard to the latter occupation, women are generally hired but men are also acceptable. This list of job categories could be expanded by including light work."

When the Examiner wrote his opinion, the statute defined "disability" as an

"Inability to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(c) (2) (A).[1] The regulations mirror these requirements. 20 C.F.R. § 404.1502, as amended.

Since the Examiner wrote his opinion, the statute has been amended. Pub.L. 90–248, Jan. 2, 1968, 81 Stat. 867. Section 158(e) of the amending statute makes the following subsection applicable to the present case.

" * * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d) (2) (A).

Literally read, this section denies disability benefits to anyone able to do

1. This section has since been renumbered, but otherwise unchanged. 42 U.S.C. § 423(d) (1) (A).

work of any kind, regardless of whether an actual job is available to him. So long as it is shown that a claimant is capable of earning a living under some occupational title, such as a hotel night clerk, he must be denied benefits even though no night clerk jobs are available, or, if they are available, even though no one would hire him because of his disability.

We find it difficult to reconcile this reading of § 423(d) (2) (A) with the rest of the statute. It would require that when a vocational consultant relates several job titles to the residual capacities of the claimant, relief must be denied. Inquiry into the number of actual openings or into claimant's actual chances of being hired would be foreclosed.

■ We do not believe that Congress intended this result. We believe there must be some probable connection between the work suggested and the claimant's ability to do the work, so that if the claimant had the proper motivation he would have a fair chance of being hired on the open market. Without this probable connection and without a fair chance, we are dealing with jobs that exist in the minds of hearing examiners and vocational consultants and not in the want-ads of newspapers or the personnel offices of businesses.

Section 423(d) (2) (A) requires consideration of the claimant's "age, education, and work experience" when determining whether he can engage in substantial gainful work. This claimant is now past 60. He has an eighth grade education. He has done strenuous work all his life. He suffers from chronic bronchitis and emphysema. He has chest pains and shortness of breath, and he wheezes. He also has fainting spells. He can no longer return to the work he knows. He must be able to move about freely and take frequent breaks. The work suggested by Dr. Pierson does exist in the national economy, but we do not think it exists for the claimant.

The vocational consultant admitted that there are "specific employment problems" for a person of claimant's age. Although discrimination on the basis of age is illegal, the consultant agreed that it is a substantial factor in the practical job market.

Aside from age, claimant's health will count against him. The Examiner stated in his opinion:

"If Mr. Lashbaugh approached an employer and recited his symptoms in the same fashion as he did at the hearing, his chances of being hired would be negligible unless there was a shortage of labor."

The Examiner continued:

"In general, it would be advisable to avoid larger companies which required physical examinations in order to screen out applicants on the basis of physical impairments alone."

The Examiner implies that the claimant might find work if he either lied about or failed to reveal his physical condition. We do not believe that Congress intended an Examiner's determination to be based on the jobs a claimant might get if he misrepresented his health.

■ It is admitted that claimant has a physical impairment that will prevent him from continuing his usual employment or in similar work. The Secretary has failed to show a probable connection between claimant's abilities (considering his age, health, experience and education) and available jobs so that claimant would have a fair chance of finding work if he actively sought it. Rosin v. Secretary, etc., 379 F.2d 189 (9th Cir. 1967).

We find the Secretary's determination is not based on substantial evidence. The decision of the Secretary is set aside and the case is remanded for proceedings consistent with this opinion.

This opinion shall serve as findings of fact and conclusions of law under Rule 52(a) Fed.R.Civ.P.