**Damon E. COX, Plaintiff,**
v.
**Wilbur J. COHEN et al., Defendants.**
**No. C–50286.**

United States District Court,
N. D. California.
Jan. 22, 1971.

Betty Aronow, San Jose, Cal., for plaintiff.

Sheldon Deutsch, Asst. U. S. Atty., San Francisco, Cal., for defendants.

ORDER GRANTING PARTIAL SUM-
MARY JUDGMENT

PECKHAM, District Judge.

This is an action brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff an award of disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423.

Plaintiff was born on January 6, 1913. From 1945 until the mid-1950's plaintiff was self-employed as an electric motor winder. He was then forced to discontinue this enterprise because of failing eyesight. Since January 1957, he has been the self-employed operator of a vending stand located in the lobby of a federal post office in San Jose. He also shares in the profits from two sets of vending machines also located on federal property. Authorization to operate on the federal property was granted by Congress in the Randolph-Sheppard Act, as amended. 20 U.S.C. § 107. Under that Act, preference is to be given to the blind. Plaintiff is also licensed to operate his stand by the California Department of Rehabilitation.

The Secretary [1] has determined that October 1, 1957 is the first date on which plaintiff met the special earnings requirements of the Act for entitlement to disability insurance benefits, since that was the first quarter in which he had 20 quarters of coverage within 40 consecutive calendar quarters. But the Secretary then determined that the plaintiff could not receive any cash ben-efits because he was not under a "disability" as that term is defined in the two applicable sections, 42 U.S.C. § 423 (d) (1) (A) and (B). [2]

The second of these sections makes special provision for a blind person of 55 or more years. Such a person is under disability if, because of his blindness, he is unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he was previously engaged. The Secretary ruled that "previously" means previous to age 55 or blindness, whichever occurs later, rather than merely previous to blindness. This question arose in this case because claimant was blind many years before the age of 55. Previous to his blindness, he was engaged in electric motor winding, but previous to his blindness *and* his attainment of 55 years, he operated the same vending stand which he now operates. Thus, on the basis of the Secretary's interpretation of "previously", plaintiff was not under a § 423(d) (1) (B) disability since his activities previous to age 55 and blindness, and then after that point, were not only comparable but identical. The Secretary did not consider the motor winding activity since, in furtherance of the foregoing interpretation, he established a ten-year period prior to blindness and age 55 as a cut-off point: occupations prior to that time would not ordinarily be considered under § 423(d) (1) (B) since they would be too remote and too unrelated to the present employment scene to make a valid comparison

---

1. Strictly speaking, the "Secretary" is the Appeals Council of the Social Security Administration, which is within the Department of Health, Education and Welfare.

2. Section 423(d) (1) (A) and (B).
   (1) The term "disability" means—
   (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a con-tinuous period of not less than 12 months; or
   (B) in the case of an individual who has attained the age of 55 and is blind (within the meaning of "blindness" as defined in section 416(i) (1) of this title), inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time.

with the post-blindness and age 55 occupation. (Transcript 17–18).

Section 423(d) (1) (A) also provides a definition of "disability". See n. 2, *supra.* Under this section, the Secretary concluded that the claimant was not under a disability because his work at the vending stand amounted to substantial gainful activity. Thus the plaintiff was denied any cash benefits.

The determinations of the Secretary are now before this court for judicial review. If supported by substantial evidence, the Secretary's findings of fact must be sustained. 42 U.S.C. § 405(g).

■ 1. The period of disability: Plaintiff argues that the date of October 1, 1957 is without substantial evidence, and that the proper date is earlier. Plaintiff merely alleges in his brief that he earned quarters of coverage as early as 1941; however, in reviewing the Secretary's determination, the court is confined to the record, and there is nothing in the record to support plaintiff's contention other than a letter from plaintiff's attorney containing the same naked assertions which are reiterated before this court. (Transcript p. 117). What *is* in the record—the earnings certification form (Transcript p. 86)—adequately supports the Secretary's finding, since 1951 appears as the first year in which quarters of coverage were earned.

The Secretary is therefore affirmed in this regard.

2. Section 423(d) (1) (A): The basic inquiry here is whether the record contains substantial evidence that plaintiff's operation of the vending stand and profit-sharing in the vending machines constitutes substantial gainful activity. The pertinent Social Security regulations, promulgated in accordance with section 223(d) (4) of the Act, are as follows.

20 CFR. § 404.1532. *Evaluation of work activities.*

(b) *Substantial gainful activity defined.*

Substantial gainful activity refers to work activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment.

20 CFR. § 404.1532.

(e) *Special employment conditions.* Work performed under special conditions of employment which take account of the employee's impairment (for example, work in a sheltered workshop or in a hospital by a patient) may, nonetheless, provide evidence of skills and abilities that demonstrate an ability to engage in a substantial gainful activity, whether or not such work in itself constitutes substantial gainful activity (see § 404.1534(b) and (c)).

20 CFR. § 404.1534. *Evaluation of earnings from work.*

*General.* (a) * * * Earnings received by an employee which are not attributable to his work activity are not considered in determining his ability to engage in substantial gainful activity. Thus, where an individual engaged in work activity as an employee under special conditions (see § 404.1532(e)), only earnings attributable to the individual's productivity, as distinguished from a subsidy related to other factors (e.g., his financial needs), are considered in determining his ability to perform substantial

gainful activity. The fact, however, that a sheltered workshop or comparable facility may operate at a deficit and receive some charitable contributions or governmental aid would not necessarily establish that a particular employee of the workshop is not earning the amounts paid to him.

20 CFR. § 404.1534. *Evaluation of earnings from work.*

(b) *Earnings at a monthly rate in excess of $140.* An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section.

In this case, it is not disputed that the plaintiff in each year since 1958 has averaged net monthly earnings around $200 or in excess thereof. In the case of Leftwich v. Gardner, 377 F.2d 287 (4 Cir. 1967), the Court of Appeals for the Fourth Circuit affirmed a lower court decision awarding benefits to an individual who was a $150 a month dishwasher. We are persuaded, however, that Congress intended in its 1968 amendments to the Social Security Act to nullify the decision in *Leftwich*, and accordingly place no reliance on it. (See pages 15–18 of defendant's memorandum).

Nonetheless, this court is of the view that the Secretary's decision that the plaintiff was engaged in substantial gainful activity was erroneous and without substantial evidentiary support. The pertinent regulation provides on its face that earnings in excess of $140 per month are not conclusive against the claimant if there is affirmative evidence that the work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity. It is clear therefore that the decision of the Ninth Circuit Court

of Appeals in Rosin v. Sec'y of Health, Ed. and Welfare, 379 F.2d 189, (9 Cir. 1967), is relevant and remains viable despite the amendments overruling *Leftwich*. Rosin was a chiropractor who, after a partially paralyzing stroke, was able to continue in this profession only with the extensive aid of his wife, and with a reduced clientele. The Secretary had concluded that Rosin was engaged in substantial gainful activity because of the amount of his earnings ($1,000 to $2,000 per year) and the patients he received. The Ninth Circuit rejected this contention and ordered that Rosin be granted disability benefits. The Court stated:

This contention ignores the fact that any income received was due only to the fact that his wife was able to and did assist him in the performance of his services. Without her presence he would not have been able to operate the machines. As it was he could not perform any manipulative services. There was uncontradicted testimony that had the appellant paid his wife a salary or hired a stranger-employee, he would not have made any profit, but would have sustained a loss. The appellant * * * should not be penalized because the small profit he made was due to the fact that he was assisted by his wife, who received no compensation for her services. 379 F.2d at 194.

In this case, there is also uncontradicted evidence that plaintiff could not successfully operate his small vending stand without the assistance of his suppliers —who arrange the magazines and candy for him—and his customers—who must be honest in informing him of the items which they are about to purchase and the denomination of the bills which they are handing him. (See appendix attached hereto). It is true that plaintiff works a 10½ hour day 5 days a week, and that he is mentally alert. The fact remains, however, that he represents the classic case of sheltered employment and that it would be unfair and unrealistic to apply the $140 a month regulation to

him. He could not earn what he does without the uncompensated aid of these people. This conclusion is buttressed by the Secretary's own regulation stating that "only earnings attributable to the individual's productivity * * * are considered in determining his ability to perform substantial gainful activity." 20 CFR § 404.1534(a). Moreover, this regulation indicates the continuing vitality of *Rosin*, since the inquiry dictated by that case is what work ability does the individual applicant himself possess. It seems to this court, therefore, that plaintiff falls within the *Rosin* case, and is accordingly entitled to his disability benefits.

■ 3. Section 423(d) (1) (B): This section provides the special definition of "disability" for the blind person 55 years of age or older. The issue under this section—what interpretation should be ascribed to "previously"—becomes mooted by our decision with regard to subsection (A) as discussed immediately above. Since we have concluded that the plaintiff is in fact under a disability as that term is generally defined in subsection (A), it becomes unnecessary to discuss the special subsection (B) criteria. Since age 55 plaintiff has continued to do the same work as prior to that age and is thus *not* engaged in substantial gainful activity. He continues, that is, to meet the subsection A test for a disability. It is true that subsection (B) deals more specifically with blind persons of 55 or more years of age, but it would certainly be anamolous to hold that if such an individual does not meet the test under subsection (B) then he is not under a disability even though he *can* qualify under subsection (A). That is, even if we agree with the Secretary's interpretation of "previously" in subsection (B) —on which we express no opinion—and conclude with the Secretary that plaintiff fails to come within that subsection, we would still hold subsection (A) appli-

cable, and plaintiff does come within its terms. The reason for this construction of the two subsections is that subsection (B), which was added in 1965, was intended to make it *easier* for the aging blind person to obtain disability benefits. (Transcript pages 13, 14) It would indeed be anamolous, therefore, to conclude that subsection (B) provides the exclusive definition of "disability" for the 55 year old blind person when the effect of such a construction would be to *deprive* such a person of disability status.[3] We thus conclude that plaintiff is entitled to receive disability benefits from the onset of his insured status, October 1, 1957, up to the present time and for as long as his present employment continues substantially unchanged.

The decision of the Secretary is therefore affirmed as to the beginning date of entitlement to disability benefits, and reversed as to whether plaintiff has been and continues to be under a disability as defined in 42 U.S.C. § 423(d) (1) (A). The matter is remanded to the Secretary of Health, Education and Welfare with directions that plaintiff be granted disability benefits in accordance with the Social Security Act.

So ordered.

### APPENDIX

### REPORT OF SOCIAL SECURITY ADMINISTRATION FIELD INVESTIGATOR

*August 8, 1969*

"8. It is impossible for the w/e to rack his magazines & books. This is done for him by his bookkeeper & a friend & the magazine wholesaler who help him now & then when the magazines are delivered. He can put away his candy, cigarettes & other items that he sells from his vending stand, if he can identify what they are. He has arranged his supplies in such fashion so that he knows where different items are, but when they are delivered to them, [sic] he must told [sic] what they are.

3. We note again, however, that this discussion of the interrelationship of the two subsections rests on our assumption,

for purposes of argument, that the Secretary was correct in his interpretation of "previously."

While I was at the vending stand, I noticed that some of his candy had been mixed with other brands of candy. There is no way for the w/e to know this, except by smell & feel unless someone tells him. So periodically, his bookkeeper, friend or magazine wholesaler, when they stop by rearrange the items for him. He does not always know when he has customers. They must call attention to themselves & often they do not realize that he is blind as he does not appear to be blind & sign that states that he is blind is not highly visible when the customers pay for the items that they are going to purchase, they must tell him what they are as the w/e doesn't know & he is at the mercy of their honesty. If they pay him with paper money, he has no way of telling if it is a $1, $5, $10, etc. bill. If it is a large bill, he has to have it verified. I did this for him while I was there interviewing him. While I was there, a customer picked up two bags of potato chips & then she came up to the stand & she asked how much they were. The w/e told her 10 cents which she paid. The potato chips were 10 cents a bag, but the w/e had no way of knowing that she had selected two bags. In this sense, every single customer of the w/e must cooperate with him. This is what the w/e meant that the operation of his stand is made possible only by the assistance & cooperation of many people."