**Victoria ORZEL, Plaintiff-Appellant,**

**v.**

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 18824.**

United States Court of Appeals, Seventh Circuit.

June 30, 1971.

---

Franklin M. Lazarus, Chicago, Ill., for plaintiff-appellant.

William J. Bauer, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Jeffrey Cole, Mary L. Sfasciotti, Asst. U. S. Attys., of counsel, for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, Victoria Orzel, seeks review, pursuant to 42 U.S.C. § 405(g), of a decision by the Department of Health, Education and Welfare denying her child insurance benefits under the Social Security Act, 42 U.S.C. §§ 402(d) and 423(d). After a hearing, the examiner found that Miss Orzel was not "disabled" under § 423(d) (1) of the Act, and the Appeals Council of the Depart-

ment affirmed his findings. Subsequently, she filed a complaint in the district court, but upon the government's motion for summary judgment, her complaint was dismissed.

Miss Orzel applied[1] for child's insurance benefits under 42 U.S.C. § 402(d)(1), which in relevant part, provides that every child of an individual insured under the Social Security Act is entitled to old age or disability insurance benefits, " * * * if such child * * * is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, * * * " "Disability" is defined in § 423(d) (1) (A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. * *"

Miss Orzel, nearing sixty years of age, was born without thumbs on either of her hands. Her right arm is substantially shorter than her left, and has been virtually useless to her. She was also afflicted at birth with a curved hip and a tipped pelvis, which continue to affect her today. In her middle years, she developed arthritis in her back, which has now become severely painful to her.

Miss Orzel attended high school for two years in which she was enrolled in typing, shorthand and bookkeeping courses. Her performance was average. After she left high school, she sought, but was refused employment. Her parents with whom she was living in Chicago, persuaded her to stay home and help with light housework.

During World War II, she was hired by the Polish National Alliance to operate an addressograph machine. Her brother, who was in the Army, had worked there before the war and helped his sister obtain the job. She worked a 40-hour week and her salary was $20 a week, less than that paid to others performing similar functions. She worked at the Alliance from 1943 to 1945. It was during this time that she developed arthritis which caused her pain at work since she was stationed in the basement at the Alliance. After three weeks in bed, she was advised by her doctor not to return to her job at the Alliance. She remained at home with her parents, performing light housework.

She looked for jobs at various times, but was not able to find a position. As her sister stated at the hearing:

"Well, the outside people won't hire her, her looks, and you see, when she starts at the job probably she is slower than others, mentally, you know, and they hire her and they give her a chance * * * [W]hen it comes to work she doesn't seem to be as fast as a normal person. * * *"

In 1955, she obtained employment with the Polish Daily News taking ads over the telephone. After 3 months, she was laid off and told there was no work for her. Shortly after she left, another person was hired to perform her functions. Miss Orzel believes she lost her job because she was too slow; she remembers that other employees were told to help her out. She attempted to secure unemployment compensation, but was informed that her employment experience was too brief to qualify for benefits. Inquiring about a position through the Unemployment Compensation Office, she was told she was unemployable.

These facts were adduced from Miss Orzel's testimony before the hearing examiner and from documentary evidence. Among the exhibits was a report from a physician who examined her in 1959. He stated that she was able to work and possessed the physical qualifications so that with training she "could be taught to use a typewriter."

---

1. In 1958, Miss Orzel filed a claim for child insurance benefits with the Department, but her application was denied administratively. In 1965, the provisions of § 423, applicable to Miss Orzel's claim, were amended. These changes permitted her to file the present claim in 1968. The hearing examiner found that the prior determination in 1958 did not have *res judicata* effect on the present claim.

The hearing examiner also believed that she was able to perform certain tasks. He stated that she possessed the ability to work in an office as a clerk or a messenger. In his evaluation of the evidence, he relied on her brief work experience as well as the letter from the physician who examined her in 1959.

Our duty here is to examine the findings of the hearing examiner and determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g). The hearing examiner found, *inter alia,* that Miss Orzel was not under "a disability that began before the age of 18," 42 U.S.C. § 402(d), *viz.,* that her congenital deformities were not of sufficient severity to render her unable to engage in "substantial gainful" employment. 42 U.S.C. § 423(d). In light of the Amendments to the Social Security Act in 1967, § 158(b) of the 1967 Amendments, 42 U.S.C. § 423(d) (2) (A), the examiner was required to find that she was able to perform certain jobs which exist in the national economy. Wright v. Gardner, 403 F.2d 646 (7th Cir. 1968).[2]

The hearing examiner based his finding that Miss Orzel was not disabled on her prior work experience and the physician's report. The relevant portions of his opinion state:

> The fact is that claimant worked successfully for two years from 1943 to 1945 as an addressograph machine operator and office clerk; * * *.

The fact that claimant returned to work in 1955 in spite of arthritis tends to indicate that she was not under a disability. It is true that she worked for only three months and was then laid off, but there is some evidence to indicate that she was laid off because of lack of work.

As late as April of 1959 when claimant was examined by a board certified specialist in orthopedic surgery, it was found that in spite of her impairment she was able to write well and had no impairment of her lower extremities. On the basis of these findings it is reasonable to conclude that even as late as July of 1959 claimant should have been able to engage in the kind of work which she had formerly performed as an addressograph machine operator and as an office clerk taking ads for a newspaper.

We believe that the decision of the hearing examiner is insufficient in its analysis and findings concerning Miss Orzel's ability to work.

The hearing examiner's reliance on her prior work experiences does not constitute evidence which can support his conclusion that Miss Orzel is able to perform work in the economy. Her job with the Alliance during World War II is no indication of her ability to perform office work. Because of the shortage of workers during the war, employers were hiring persons to fill positions whom

2. Prior to the Amendments, the courts allowed disability benefits upon a finding that a claimant could not be *hired* for work. See Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966) ; Harrison v. Gardner, 369 F.2d 172 (5th Cir. 1966) ; Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). The Amendments of 1967 changed this standard to provide, 42 U.S.C. § 423 (d) (2) (A) :

> [A claimant] shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

If Miss Orzel's claim was decided under pre-1967 law, we have no doubt that she would be adjudged to be under a disability. The record indicates that Miss Orzel was refused employment on numerous occasions. She stated that, notwithstanding her abilities, employers were hesitant to hire her because she was crippled.

they would not consider qualified in other more normal periods. As it was, Miss Orzel secured a position with the Alliance because of the intercession of her brother, who knew the employer. Her salary was less than others in comparative positions. As the court in Lowe v. Finch, 297 F.Supp. 667, 671 (W.D.Va.1969), noted in discussing a similar work experience during World War II: "Such a brief period of work under these sheltered conditions does not demonstrate an ability to perform work which is substantial and gainful in a normal, competitive work environment. * * *"

■ Her three-month tenure with the Polish Daily News is not only inadequate to support the examiner's conclusions, but, in fact, adds weight to a contrary finding. The circumstances surrounding her departure from the Polish Daily News indicate that she was asked to leave, not because there was not enough work, but because she was too slow. If she was dismissed because of insufficient work for her, then it is unlikely that a replacement would have been made in such a short time. Rather, the Polish Daily News experience indicates that Miss Orzel, because of her congenital deformities and their resulting vocational handicaps on her, was unable to adequately perform basic office skills.

■ The remaining evidence supporting the examiner's decision—the 1959 physician's report—is likewise deficient. While the conclusions of a physician are probative with respect to a claimant's physical symptoms, they cannot alone support a finding of employability. A physician can adequately offer his expertise, as this one did, to show that a claimant is *physically* able to perform "substantial gainful" employment. But, other factors, extraneous to a physical diagnosis, enter into an evaluation of a claimant's ability to work. Granted that

Miss Orzel, as the doctor stated, can move her limbs freely enough to operate a typewriter, but her mere physical ability to perform a task does not establish that she could perform it, nor perform it with the speed and skill required of an office employee in the competitive labor market. In fact, her performance at the Polish Daily News suggests a contrary conclusion.

Thus, we find that the hearing examiner relied too heavily on the physician's statements. A vocational expert could supply information concerning Miss Orzel's capabilities in light of the conditions in the labor market. In fact, in many cases reviewed by the federal courts since the 1967 Amendments, the testimony of vocational experts was part of the administrative record. See Gentile v. Finch, 423 F.2d 244 (3d Cir. 1970); Miller v. Finch, 430 F.2d 321 (8th Cir. 1970); Harvey v. Finch, 313 F.Supp. 323 (N.D.Calif.1970); Sullivan v. Finch, 315 F.Supp. 1252 (W.D.Pa. 1970); Boback v. Finch, 304 F.Supp. 966 (W.D.Pa.1969); Schmidt v. Secretary of Health, Education and Welfare, 299 F.Supp. 1315 (D.Puerto Rico 1969). We do not hold that the testimony of vocational experts is required in all cases or even in this one. We merely suggest that a vocational expert can supply such information concerning claimant's ability to perform "substantial gainful" employment, which is fatally absent in this case.

■ Because of the above mentioned deficiencies in the opinion and findings of the hearing examiner, we conclude that his finding on "disability," required under 42 U.S.C. §§ 402(d) and 423(d) (1), is not based on substantial evidence.

In accordance with § 405(g), we reverse and remand this case to the district court to order further proceedings before the hearing examiner in light of this opinion.

Reversed and remanded.