**Lloyd M. PERGANDE, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION & WELFARE, Defendant.**

**No. 70–C–352.**

United States District Court,
W. D. Wisconsin.

Dec. 4, 1972.

Stephen O. Hart, of Conway & Braun, Edgerton, Wis., for plaintiff.

John O. Olson, U. S. Atty., Madison, Wis., for defendant.

## OPINION and ORDER

JAMES E. DOYLE, District Judge.

Plaintiff has petitioned for review of the defendant Secretary's decision denying the plaintiff's claim that he is entitled to the establishment of a period of disability or to disability insurance benefits under the provisions of Sections 216(i) and 223 of the Social Security Act, as amended. The defendant has filed an answer; his motion for summary judgment, supported by affidavits and a certified copy of the entire administrative record (hereinafter cited as "tr."), is presently before this court. Jurisdiction to review the Secretary's decision is afforded by 42 U.S.C. § 405(g).

The plaintiff contends that the defendant's motion for summary judgment should be denied because the plaintiff was not represented by an attorney during the administrative proceedings; because the defendant neither considered the plaintiff's age, work experience, and education nor made findings about what gainful work the plaintiff might do; and because the defendant's finding that the plaintiff is not disabled is not supported by substantial evidence in the record of the administrative proceedings.

In the following section entitled "Facts," I have set out some of the findings of the Director of the Division of Evaluation, the Director of the Division of Reconsideration, and the Hearing Examiner. All findings of the administra-

tive officers are so labeled. I conclude that there is no genuine issue as to the material fact that the said findings were made by the said officers. Whether these findings are themselves supported by substantial evidence in the record is a question which I will discuss hereinafter in a section headed "Opinion."

In the following section headed "Facts," I have also set forth certain findings of my own. These relate solely to the procedural history of this case. They do not bear on whether the plaintiff is disabled or employable. As to these additional findings of mine, I conclude that there is no genuine issue of material fact.

## FACTS

The plaintiff filed applications for establishment of a period of disability and for disability insurance benefits on September 25, 1967, and October 15, 1968 (tr. 16–19, 22–25), alleging that he became unable to work on March 22, 1967. Both applications were denied initially; the Director of the Division of Evaluation made the following general findings:

We find that . . . you do not meet the disability requirement. In reaching this determination we considered how much your condition has affected your ability to work. After carefully studying the records in your case, including the medical evidence and your statements and considering your age, education, training and work experience, it has been determined that your condition is not disabling. . . . (tr. 20); see (tr. 26).

No further action was taken by plaintiff on the September 25, 1967, application. The October 15, 1968, application was denied a second time, after reconsideration. (tr. 9, 29). The Director of the Division of Reconsideration made the following general findings:

Your record shows that you have worked as a finisher for a factory for about 15 years.

The medical evidence includes information from treating physicians, hospital records, and the results of special examinations arranged for you. . . . Although you have some emphysema and bronchitis special breathing tests and other findings show you have a satisfactory breathing reserve to enable you to perform work of a moderate nature. Based upon the evidence, it is determined that you retain the ability to perform your usual work or other gainful work consistent with your skills and background.

The plaintiff requested a hearing; the hearing examiner found against the plaintiff, summarizing and evaluating the evidence as follows:

### SUMMARY OF EVIDENCE

Claimant who was born on July 11, 1924, alleges that he became unable to work on March 22, 1967 because of acute bronchial asthma. He was employed on an assembly line by an automobile body company from 1952 until March 1967. He also has engaged in the operation of a farm consisting of 65 acres until he sold it on October 15, 1968. He had 10 dairy cows, sold the milk products, and obtained some monetary benefits because he placed the land in the soil bank. He is married and has 5 children. He owns an automobile and drives it. He discontinued working on March 22, 1967 because of a cold. He consulted Dr. Davis who advised him to enter a hospital on three different occasions. On March 24, 1968 to July 8, 1968 he returned to his job as a finisher on a production line for his old employer working 8 hours a day, 40 hours per week.

### SUMMARY OF THE MEDICAL EVIDENCE

Dr. Thomas S. Sargent reported that he had not treated the patient whose attending physician is deceased but that he obtained information from available records of the attending physician which do not indicate the

degree or exact duration of impairment. The diagnoses were: 1. chronic bronchospastic bronchitis; 2. situational depression.

On September 29, 1967 Mrs. Vivian H. Horn of the Medical Records Department of Mercy Hospital reported that the claimant has been admitted to the hospital on March 22, 1967; March 31, 1967 and June 24, 1967. The history obtained by Dr. M. D. Davis was that claimant had obvious dyspnea last night when seen in his office with a wheezing, asthmatic type of breathing. He had been short of breath for 3 or 4 days but had continued to work. He was hospitalized because of so called "cardiac episodes." Final diagnosis: 1. acute bronchial asthma, recurrent; second diagnosis—chronic bronchitis; 2. same as above; 3. also same as above. Treatment in the case of each hospitalization was medical only.

Dr. Charles E. Reed of the University Hospitals reported that claimant entered the hospital on May 4, 1967 on referral by Dr. Davis for asthma. The initial diagnosis was intrinsic bronchial asthma with the failure of the spirometry to improve much with epinephrine and with his long history of heavy smoking. The doctor thought that a chronic obstructive bronchitis was also possible. Partly for therapeutic reasons and partly to obtain additional evidence of the reversibility of the airway obstruction, he was treated with Prednisone, starting with 40 milligrams a day and declining to 15 milligrams a day at discharge. He was also given Amesec four times a day. There was some improvement in his symptoms but the sputum continued to be purulent and Ampicillin was added to the regime. By May 9th, the forced expiratory volume had improved to 3600 cc., with 2300 cc. in one second. He was discharged on May 19, 1967 with recommendations to continue the Prednisone, 10 milligrams daily in the morning, the Amesec and Theophylline as needed. With incomplete reversal of his airway obstruction during his hospital treatment he thought that it was quite likely that he does have a degree of chronic obstructive bronchitis, in addition to bronchial asthma.

Claimant was admitted to University Hospitals on October 2, 1967 and discharged on October 24, 1967. Dr. Gene M. Abroms of the Department of Psychiatry stated that the physicians were extremely concerned about claimant's mental status on the basis of the history of his disturbed behavior as well as on the way he was behaving in the hospital. It appeared there was some question of organicity. However, as mentioned, while hospitalized in the Psychiatry Ward, this disturbed behavior was not observed. He was discharged with an appointment to return on October 30th with his wife to see Dr. Reed. It is strongly recommended that Mr. and Mrs. Pergande as well as possibly other members of their family be seen in couples or family psychotherapy. Both of the Pergandes received this idea enthusiastically. The prognosis for Pergande may be favorably looked upon if effective therapy of this nature is able to be achieved.

John J. Ouellette, M.D. of the University Hospitals reported to Dr. Sargent on August 2, 1968 that claimant was seen in the hospital on 29th of July 1968 for follow-up of his asthma. The physical examination reveals a healthy appearing man with a rather flattened affect. Examination of the nose and throat shows some dusky erythematous changes. The patient reports having had a recent cold and sore throat superimposed on his other chronic condition. Examination of the tympanic membranes and ear canals find them to be within normal limits. Examination of the chest shows slight increase in the AP diameter. The breath sounds were slightly diminished and were accompanied, both in inspiration and expiration, with wheezing. A spirogram revealed a vital capacity of 2.9 liters, of which 90% was expired during the first three seconds.

Stephen Toms, M.D., a medical consultant with the Bureau of Disability Insurance, reviewed the medical evidence and concluded that the documentation indicates that the claimant does not have irreversible obstructive airway disease which is of such severity as to constitute a disability. He has been seen by the psychiatric staff of the same hospital during a hospitalization of October 2, 1967 at which time psychiatric severity was not really at all demonstrated. It was felt that the prognosis may be favorably looked upon if effective therapy of this nature is able to be achieved.

In an interview by a member of the Vocational Rehabilitation Medical Staff on April 25, 1969 Dr. Reed, allergist at the University Hospitals, reported that the claimant was a very difficult man to evaluate in regard to disability. That pulmonary difficulty, as measured by pulmonary function tests, and his clinical evaluation showed that he was not severely impaired to any degree. The doctor said that he felt the patient's big problem was psychiatric. The wage earner has no ambition. In addition to this he is chronically depressed, and reflects this in his symptomatology. In 1967 he was evaluated by a psychiatrist and therapy was recommended, but the wage earner did not choose to follow up on this.

Dr. Joesph G. Brown of the Mental Health Association reported on a consultative psychiatric examination of the claimant he performed on June 26, 1969 that it would appear this man is suffering from moderate depressive reaction, psychoneurotic type, which has been long standing and complicated by his loss of pulmonary function. The symptoms about which he complains did not, in the opinion of the interviewer, have any relation to poor pulmonary function but are related to the stress and tension engendered by his underlying neurotic fears. There is no evidence from the records received from your office of the extent

to which pulmonary dysfunction disables him. He is competent to manage his own funds. Psychotherapy might be effective in helping him understand the relationship between stress and his primary symptoms that disable him.

Dr. Ivan Knezevic of Madison Radiologists, reported to Dr. A. J. Richtsmeier that chest x-rays showed a normal cardiac silhouette and the aorta was not enlarged. There is evidence of some old fibrotic changes associated with some pleural thickening at the right base. There is no sign of active pulmonary disease or infiltrate. Left costophrenic angle is clear. The dorsal spine and bony structures are normal. Conclusion: 1. normal cardiac thoracic ration; 2. old fibrotic and pleural in the right base. No evidence of active pulmonary disease.

Dr. A. J. Richtsmeier reported on August 19, 1969 as to an examination of the claimant on August 11, 1969. His impressions were: 1. chronic obstructive pulmonary disease, probably bronchial asthma from history, with only minor obstructive ventilatory insufficiency; 2. multiple lipomata; 3. early essential hypertension.

Dr. William G. Healy reported on September 3, 1969 with reference to retirement of claimant from his employment with an automobile manufacturer that his examination indicated that claimant did not possess the necessary insight or other resources to profit significantly from psychotherapy and he believed it probably would be for the benefit of all concerned to allow him to implement his early retirement since that is what he wants to do and he did not believe he could change his opinion.

## EVALUATION OF THE EVIDENCE

The claimant waived his right to an oral hearing in this case. The written evidence consists of medical reports and opinions with reference to claimant's physical and mental condition and evidence of his work activity.

The evidence as to physical impairments indicates that the claimant has a ventilatory impairment. Although several of the examining and treating doctors reported obstructive airway disease, Doctors Richtsmeier and Reed found no significant obstructive pulmonary disease because of this condition.

There is evidence that the claimant has psychiatric problems which cause him to act in a peculiar manner at times. However, this condition does not appear to interfere greatly with the claimant's day by day activities.

Claimant contends that he made an effort to return to his former employment but that he was unable to continue such work after a period of approximately 3½ months. However, in spite of his alleged inability to engage in work it appears that he engages in housework and yard work about his home. This would indicate that he could be employed at his usual work or other less demanding work which would not require him to perform exhausting work.

## FINDINGS OF FACT

Based upon all of the credible evidence of record herein the examiner finds:

1. That claimant has impairments consisting of:

    a. chronic obstructive pulmonary disease, with only minor obstructive ventilatory insufficiency.

    b. moderate depressive reaction.

2. That claimant's impairments neither singly nor in combination have at any time for a continous period of 12 months been of such severity as to have precluded the claimant from engaging in substantial gainful activity.

Upon the plaintiff's request, the Appeals Counsel reviewed the hearing examiner's decision, considering all the evidence before the hearing examiner and additional evidence submitted to the Council. The Appeals Council found against the plaintiff, affirming the hearing examiner's decision. (tr. 4).

I find that the record contains three kinds of evidence upon which the Secretary could have based his findings: (1) the written and oral statements of the plaintiff; (2) medical evidence consisting of the reports of doctors and hospitals; and (3) the "impressions" of interviewers for the Department of Health, Education, and Welfare, identified by name but not by qualifications. Further, I find that the record does not contain testimony by a vocational expert.

## OPINION

The decision of the Appeals Council is the final decision of the Secretary. 20 C.F.R. § 404.951.

The term "disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

The statute further provides that an individual is disabled only when his impairment precludes him from performing not only his previous work, but also:

[A]ny other kind of substantial gainful work which exists in the national economy. . . . "[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

Regulations issued by the Secretary define "substantial gainful work" as activity involving "the performance of significant physical or mental duties . . ., productive in nature [and] performed for remuneration or profit." 20 C.F.R. § 404.2532(b).

The plaintiff alleges in his brief that he was without the benefit of counsel throughout the administrative proceedings. The plaintiff has not submitted any material satisfying the requirements of Rule 56(c), (e), supporting this allegation; consequently this contention must be rejected. Even assuming that the plaintiff had made a factual showing that he was without counsel, this court has held that the absence of counsel in disability proceedings, without a clear showing of prejudice at the agency level proceedings does not warrant a remand. Pinkert v. Richardson, Case No. 70–C–284, p. 5. See Domozik v. Cohen, 413 F.2d 5, 9 (3rd Cir. 1969). See also Steimer v. Gardner, 395 F.2d 197 (9th Cir. 1968); Kennedy v. Finch, 317 F.Supp. 7 (E.D. Pa.1970); Schad v. Finch, 303 F.Supp. 595 (W.D.Pa.1969). There has been no showing of unfairness in this case; consequently, I conclude that the alleged absence of counsel does not constitute good cause to remand to the agency.

The plaintiff also contends that the hearing officer did not satisfy his alleged affirmative duty to make findings about what employment opportunities are available to the plaintiff before denying the plaintiff disability benefits. The hearing officer concluded that the plaintiff's physical and mental problems were not of sufficient severity to render him incapable of engaging in "substantial gainful employment," stating "the applicant could be employed at his usual work or other less demanding work which would not require him to perform exhausting work." (tr. 13).

In order to reach this conclusion logically, the hearing examiner should have considered evidence on the following issues: (1) what the physical capabilities of the applicant are; (2) what employment opportunities are available to a man of these abilities. Kerner v. Flemming, 283 F.2d 916, 921 (2nd Cir. 1960). See Orzel v. Finch, 445 F.2d 150, 153 (7th cir. 1971). Although there is substantial evidence about the first issue, there is little if any evidence relevant to the second issue in the administrative record.

The record contains the plaintiff's own statements, written on forms or made to interviewers, about the light work which he has done at his home and on his farm subsequent to the termination of his job as an assembly worker. He states that he performed light chores on his farm, that he drove the tractor during haying season, that he cared for his children while his wife was working, that he did light housework, that he gardened and did woodworking. (tr. 38, 46, 49, 54, 85). The interviewers' impressions about the plaintiff's ability to read, respond, write, comprehend, breathe, sit, walk, use his limbs, and speak are also in the record. (tr. 40, 48). Finally, the record contains the statements of the doctors who examined the plaintiff and their conclusions about whether he could continue to work at his old position and about what other jobs he might perform.

Although the doctors' conclusions are probative of the plaintiff's physical symptoms, i. e., these conclusions are relevant to the first issue articulated, *supra*, they cannot alone support a finding of employability. As stated by the Seventh Circuit in a case involving an applicant with serious congenital defects:

> A physician can adequately offer his expertise, as this one did, to show that a claimant is physically able to perform "substantial gainful" employment. But, other factors, extraneous to a physical diagnosis, enter into an evaluation of a claimant's ability to work. . . . [T]he mere physical ability to perform a task does not establish that [the applicant] could perform it, nor perform it with the speed and skill required of an . . . employee in the competitive labor market. *Orzel, supra* at 154.

The plaintiff's statements do not cure the insufficiency of the medical evidence with respect to the hearing examiner's conclusion that the plaintiff could return

to his former employment, as the plaintiff maintains that he could not perform the assembly line work. (tr. 51, 52). Therefore, I conclude that the hearing examiner's finding that the plaintiff could return to his former job is not supported by the evidence on the record.

The hearing examiner also found that the plaintiff could be employed at less demanding work. (tr. 13). It is difficult for this court to evaluate the record with respect to this rather ambiguous finding, as the only description of the plaintiff's former job is that he worked on an automobile assembly line putting in protection for seat belts and using a power screw driver. (tr. 49, 55). Furthermore, the hearing examiner has not even specified what potential employment he envisions for the plaintiff. Other courts have gone so far as to hold that the Secretary has not sufficiently supported his finding of employability even where he lists possible jobs from government studies that can be performed by persons with the general education and physical abilities of the applicant. Stancavage v. Celebrezze, 323 F. 2d 373, 377–378 (3rd cir. 1963). See Kelly v. Cohen, 293 F.Supp. 261, 265 (W.D.Pa.1968); Bugdnewicz v. Celebrezze, 249 F.Supp. 139, 143 (E.D.Pa. 1966). I recognize that the Department of Health, Education, and Welfare must process many thousands of disability applications each year. Yet, as observed by Judge Friendly:

> [T]he Secretary's expertise should enable him readily to furnish information as to the employment opportunities (including those in sheltered workshops), or the lack of them, for persons of plaintiff's skills and limitations. Kerner, supra, 283 F.2d at 922.

I need not, however, reach the question whether the Secretary must spell out available work opportunities in all cases. The broad language of the Seventh Circuit in Jones v. Celebrezze, 331 F.2d 226, 228 (7th Cir. 1964), indicates that he does not have this burden. See Mitchell v. Gardner, 123 U.S.App.D.C. 195, 358 F.2d 826, 830 (1966). But the

Secretary must nonetheless make findings which are supported by substantial evidence in the record, as demonstrated by Orzel, supra, which was decided after Jones. Furthermore, the evidence in the record must extend beyond the applicant's physical ability to perform a particular task. See Orzel, supra, 445 F.2d at 154. What kind of evidence is required may have to be decided case by case. In this case, as in Orzel, a vocational expert could supply useful information about the applicant's capabilities in the light of the job market. Orzel, supra at 154.

Other than the statements by the plaintiff about the work which he did around his home and on his farm, and the statements of the interviewers and doctors as to his general capabilities, the record here is devoid of evidence about the employability of the plaintiff. In Jones, supra, the record revealed that the applicant had varied work experiences. Moreover, the reviewing court may have concluded that the Secretary believed that the applicant could have continued in one of his prior occupations despite his present inability to stoop or do heavy lifting, e. g. working as a chauffeur, a truck operator, a horsegroom or a dishwasher. Jones, supra, 331 F.2d at 228. However, the record in the instant case will not support an analogous conclusion. Furthermore, the applicant in Jones admitted that he could perform light or janitorial work. Id.

I, therefore, conclude that the Secretary's finding that the plaintiff could perform less demanding work is not supported by substantial evidence in the record.

■ Although the ultimate burden of proving the existence of a disability is on the claimant, Kutchman v. Cohen, 425 F.2d 20, 24 (7th Cir. 1970); Jones v. Celebrezze, 331 F.2d 226, 228 (7th Cir. 1964), the Secretary has the obligation not to make findings which are without support in the evidence. I cannot sustain a denial of benefits where the evidence does not support the findings of

the Secretary. *Kerner, supra,* 283 F.2d at 922; *see Orzel, supra.* Under 42 U. S.C. § 405(g), this court "may, at any time, on good cause show, order additional evidence to be taken before the Secretary." The breadth of this provision, in comparison with similar sections providing for review of the decisions of agencies charged with administering economic regulatory statutes, reflects Congress's recognition that proceedings within the Social Security Administration are often not truly adversary and that applicants for disability benefits are frequently unrepresented by counsel. *Kerner, supra* at 922, n. 9. I conclude that in the instant case "good cause" has been shown as the applicant "has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." *Kerner, supra* at 922.

Accordingly, for the reasons stated above and upon the basis of the entire record herein, it is hereby ordered that the defendant's motion for summary judgment is denied and that this case is remanded to the Secretary of the Department of Health, Education, and Welfare to take additional evidence.