**James E. DEBOLT, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education, and Welfare of the United States, Defendant.**

**No. 77–1068.**

United States District Court,
S. D. Illinois, N. D.

Feb. 13, 1978.

John A. Slevin and Gregg N. Grimsley, Peoria, for plaintiff.

Terry G. Harn, Asst. U. S. Atty., Peoria, for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This is an action seeking judicial review of a final decision of defendant, Secretary of the Department of Health, Education, and Welfare, denying plaintiff's application for social security disability insurance benefits. The plaintiff has exhausted his administrative remedies and is properly before the court under the provisions of 42 U.S.C. § 405(g). The court is empowered under this section to enter judgment upon the pleadings and administrative record. The sole issue presented is whether the Secretary's final decision is based upon substantial evidence. After a thorough review of the pleadings and administrative record, the court has determined that the Secretary's decision is not based upon substantial evidence.

## PROCEDURAL HISTORY

Plaintiff filed his original application to establish a period of disability and for entitlement to disability insurance benefits on March 18, 1974. After being notified, on June 3, 1974, that his application had been denied, plaintiff requested reconsideration of his claim. Upon reconsideration, the original denial of benefits was affirmed. Thereafter, upon plaintiff's request, a hearing was held before an administrative law judge (A.L.J.), who, on June 3, 1975, decided that plaintiff was entitled to neither a period of disability nor to disability insurance benefits. Pursuant to plaintiff's request for review of that decision, the Appeals Council determined, on September 15, 1975, that the decision of the A.L.J. would stand as the final decision of the defendant Secretary.

Subsequently, plaintiff timely filed a complaint in this court on November 12, 1975, seeking review of the defendant's decision. By stipulation of the parties, the case was remanded to the defendant Secretary on February 23, 1976, for further administrative proceedings, pursuant to § 205(g) of the Social Security Act, as amended. 42 U.S.C. § 405(g).

A supplemental hearing before the A.L.J. was conducted on August 17, 1976, at which additional testimony and medical evidence was presented. The A.L.J. rendered his recommended decision on October 26, 1976, in which he concluded that plaintiff is not entitled to either a period of disability or to disability insurance benefits, despite his finding of fact that "claimant's impairments have reached a level of severity which would prevent him from engaging in substantial gainful activity." That decision was based upon the conclusion that plaintiff's condition does not constitute a "disability" within the meaning of § 223(d)(1) of the Social Security Act, 42 U.S.C. § 423(d)(1), because plaintiff failed to prove that his physical "impairments have prevented him from engaging in substantial

gainful work activity for any continuous period beginning on or prior to the date of this decision which has lasted or could be expected to last for a continuous period of at least twelve months."

The decision of the Appeals Council was issued on June 6, 1977, holding that plaintiff is not entitled to a period of disability or to disability insurance benefits. The recommended decision of the A.L.J. was adopted by the Appeals Council, with one significant exception. Specifically, the Appeals Council was of the opinion that the medical evidence failed to show that plaintiff "has an impairment or combination of impairments which prevents him from performing substantial gainful activity." This conclusion was apparently based upon recent medical evidence submitted by plaintiff, which, it seems fair to assume, was unavailable to the A.L.J.

Following the decision of the Appeals Council, which stands as the final decision of the defendant, plaintiff commenced the instant action for judicial review on July 11, 1977. Upon the defendant's motion, the prior action for judicial review in this court (No. P–CIV–75–122) was reopened and consolidated with the instant case. The matter is now ripe for review upon the pleadings, administrative record, and briefs of the parties.[1]

## APPLICABLE LAW

Section 216(i) of the Social Security Act provides for the establishment of a period of disability, and § 223 of the Act provides for the payment of disability insurance benefits where the requirements specified therein are met. 42 U.S.C. §§ 416(i), 423. To be entitled to disability insurance benefits, the claimant must (1) be insured, as defined in the Social Security Act, 42 U.S.C. § 423(c)(1); (2) not have attained the age of sixty-five; (3) have filed an application for such benefits; and (4) be under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). It is undisputed that plaintiff meets the

---

1. Defendant's brief was not timely filed under Rule 20(d) of the local rules of practice in the Southern District of Illinois, but has been considered by the court in reaching its determination.

first three requirements. The fourth requirement, however, is the essential matter in dispute, since the defendant Secretary's decision denying benefits is predicated upon a finding that plaintiff was not under a "disability."

The term "disability" is defined in Section 223(d)(1) of the Social Security Act as the "inability to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) [emphasis added]. Section 223(d)(2)(A) of the Act goes on to provide that with certain exceptions not applicable here:

> "an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

Moreover, the meaning of the terms "physical or mental impairments" is clarified in § 223(d)(3) of the Act, providing that such an impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Statements of the applicant, including his own description of his impairment (symptoms), are, alone, insufficient to establish the presence of a physical or mental impairment. 20 C.F.R. § 404.-1501(c)(1976).

The burden of proof is borne by the claimant to establish his entitlement to disability insurance benefits. *Jones v. Celebrezze,* 331 F.2d 226 (7th Cir. 1964); *Jeralds v. Richardson,* 445 F.2d 36 (7th Cir. 1971). However, once he has shown that he no longer is able to perform the kind of work in which he previously has been engaged, the burden then shifts to the Secretary to prove that there is available some other kind of substantial gainful employment which the claimant is capable of performing. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir. 1974).

Whether the claimant has met his burden of proving that his impairment constitutes a "disability" within the meaning of the Act, is determined by all the facts in the case. 20 C.F.R. § 404.1502(a)(1976). The responsibility for making this determination, of course, rests with the Secretary. For that reason, statements of a physician that an individual is, or is not, "disabled," is not dispositive of the question. Nevertheless, such a statement is certainly a factor to be considered by the Secretary in reaching his decision. The weight to be given to such a statement, however, depends upon the extent to which it is supported by clinical findings and is consistent with the other evidence in the case. 20 C.F.R. § 404.1526 (1976).

Judicial review of the Secretary's decision is limited to a determination of whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. § 405(g). It is not the function of this court to appraise the evidence *de novo.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Keeping this analytical framework in mind, we now turn to an examination of the facts in the instant case.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND TESTIMONY

Mr. Debolt testified that he suffers from a back injury dating back to December 5,

1973, when he slipped while stepping out of his automobile, twisting his back in the process. Plaintiff was born in October, 1920, and completed two years of high school. Immediately prior to the injury, he worked as a house painter. From 1953 to 1971 he owned and operated a hardware and supply business, in which he mixed paint, overhauled engines, and repaired lawn mowers. Since his injury, according to his own testimony, Mr. Debolt has been unable to do anything for pleasure, perform any of the activities associated with his prior occupations, or perform any kind of work. Consequently, he has not been gainfully employed since the onset of his injury.[2]

Plaintiff has been examined and treated by numerous physicians and chiropractors for continuing pain in his back, left hip, and legs. At the initial hearing before the A.L.J., plaintiff testified that he cannot lift anything over ten pounds, and when he bends over, his knees buckle and his left hip hurts. Three or four times a week he has painful muscle spasms in the left hip joint, extending into his back, which last for approximately thirty seconds. He also has pain in both legs and feet, which he describes as a burning sensation that gets worse when he stays in one position. At the first hearing, plaintiff stated that he can stand for fifteen or twenty minutes and sit for thirty minutes, but can remain in any one position for only a very short period of time before having to change positions.[3]

By the time of the supplemental hearing held on August 17, 1976, the condition of plaintiff's back and hips had changed little, but his legs reportedly are getting worse. Plaintiff says the excruciating pain which he initially experienced is no longer constant, and he has more movement now in his back and hips than he had immediately after the injury; but other than that, his back and legs are the same now as in December, 1973. He states that he has never been free from pain in walking, sitting, squatting, or bending since that date and can perform no function without pain. After sitting for a period, plaintiff must get up and remain standing for at least five minutes before returning to a sitting position.

Because of his back injury, plaintiff has had to severely restrict his activities. He testified that he no longer is able to drive, cannot help his wife with the housework or gardening,[4] and has been forced to restrict his travel away from his home to one or two short trips per week, for a period of less than thirty minutes, accompanying his wife shopping or visiting his brother. Plaintiff is capable of attending to his own personal needs except that he sometimes requires the assistance of his wife in putting on his socks. Bathing is also difficult.

At the time of the supplementary hearing, plaintiff suffered from a facial condition known as a tic douloureux. This condition caused excruciating pain in the left side of his face, according to plaintiff's own testimony. He stated that the pain from this condition was constant but could be kept at a lower level through the use of medication.

Plaintiff also complains of a skin condition which began seven to ten years ago, and which, by October, 1974, required dermatological treatment. This condition reached the point where he was troubled with unsightly lesions and eruptions all over his body, causing severe itching. Plaintiff admits that this dermatological condition causes no limitation and is controlled effectively by medication, although the medication makes him feel "doped up."

---

2.  Plaintiff states that in March of 1974, he tried to obtain work as a helper in a grocery store, but was unsuccessful when the prospective employer learned of his back condition.

3.  At the supplementary hearing, plaintiff reported that he can stand for thirty minutes, sit for one hour, and lift a maximum of five to ten pounds.

4.  Plaintiff says he occasionally does some work in the yard by crawling along the sidewalk to trim the grass with an electric shears, and on occasion uses a tree pruner.

## SUMMARY OF MEDICAL AND VOCATIONAL EVIDENCE

On February 25, 1974, plaintiff was admitted to Community Hospital of South Broward because of low back pain, with radiation into the left buttock area, after having been treated unsuccessfully by a chiropractor. The admitting physician, Dr. Morton J. Morris, D. O., found plaintiff to be uncomfortable during the course of his examination, although not in acute distress. Treatment consisted of bed rest, muscle relaxants, analgesics, and physiotherapy. Consultation was obtained with Dr. Earl F. Gonyaw, a neurosurgeon, who reported plaintiff's neurological examination as normal. X-rays of the lumbar spine and pelvis were negative. There was no evidence of nerve root damage, but there was evidence of low back myositis on the left side in the lumbar area.[5] Plaintiff was discharged from the hospital on March 5, 1974, with a final diagnosis of (1) left sciatic neuralgia, and (2) lumbosacral instability. His prognosis was guarded and he was advised to continue on restricted activity and to return to his chiropractor for treatment.

Dr. Edwin R. Lee, the physician who first reviewed Mr. Debolt's application for benefits for the Department of Health, Education, and Welfare, noted on May 20, 1974, that plaintiff's "impairment is now severe." However, it was his opinion that with therapy the condition would improve and that "it is not expected to last twelve months." Therefore, the claim was denied.

Plaintiff was examined by Dr. Bruce Ehmke, a specialist in neurology, who found no evidence of nerve root involvement or neurologic deficits. Dr. Ehmke's conclusion was that plaintiff was experiencing periodic vascular insufficiencies as the result of generalized arteriosclerosis.

At the request of his private disability insurance carrier, plaintiff was seen on January 21, 1975, by Dr. John E. Schwab, a neurosurgeon. Dr. Schwab disagreed with Dr. Ehmke's diagnosis of peripheral vascular disease. His report stated that plaintiff stood tilted to the left and supported his weight on either leg, but not both simultaneously. If he straightened one leg, he would bend the knee of the other leg. He flexed forward to only 30 to 35 degrees, at which point he complained of pain in the left sciatic distribution. Extension was done minimally, with pain referred to the left sacroiliac region. He actively resisted and would not permit straight leg raising beyond 30 degrees on the left or 45 degrees on the right, complaining of backache but not leg ache. He would permit elevation of both legs together to only 20 degrees. In the prone position, plaintiff seemed to be tender throughout the lumbar spine, but this was maximum over the L5–S1 interspinous ligament. Furthermore, plaintiff could not do the heel to toe test because of his tilting.

Dr. Schwab stated that plaintiff could be malingering, but that there was no true basis for suspecting that since there were no obvious contradictions. Therefore, according to Dr. Schwab, plaintiff is a herniated disc suspect until proved otherwise by myelogram. His final diagnosis was a lumbosacral sprain with a possible degenerating and intermittantly protruding disc.

Dr. Charles K. Donegan, a specialist in internal medicine and cardiovascular diseases, examined plaintiff on January 16, 1976. He observed a moderate limitation of motion in both hips, with a more serious limitation in plaintiff's left hip. Plaintiff was unable to bend over and appeared to have pain moving from a recumbent to sitting position. No neurological abnormalities were found. Dr. Donegan's probable diagnosis was that of a herniated disc, but felt that a myelogram was necessary.

---

5. Dr. D. J. Lewis, a medical consultant for the Illinois State Agency, reviewed the plaintiff's file on March 4, 1974, and commented specifically on Dr. Gonyaw's neurosurgical consultative examination report, concluding that he could find no evidence in the record of any significant disability. Dr. Lewis again reviewed all of the medical evidence on November 27, 1974, and stated that the objective medical evidence did not indicate a significant impairment.

Plaintiff's back problem was diagnosed as a possible disc pathology in the lower spine by Dr. Victor V. Jay, a general practitioner who examined plaintiff on May 15, 1976. He felt that plaintiff could walk two blocks, stand about five minutes, and sit about ten minutes. There was no limitation in reaching with the hands. Bending was very limited. Plaintiff could lift 5 pounds in weight. Dr. Jay stated that he was of the opinion that plaintiff was unable to perform any physical work at that time.

Dr. Gordon A. Shultz, a specialist in orthopedic surgery, examined plaintiff on June 11, 1976, at the request of the Department of Health, Education, ·and Welfare. Plaintiff was found to be able to get stiffly out of a chair and walk around. He would not flex his body in any direction, and Dr. Shultz felt that plaintiff probably could not. There was intense muscle spasm all around the torso. He could barely do toe walking and barely raise up on his heels. Straight leg raising was positive at twenty degrees bilaterally, and there was intense muscle spasm in the lower back. X-rays of the lumbar spine and left hip failed to reveal evidence of pathology. Dr. Shultz was of the opinion that plaintiff was totally disabled on an organic basis and not on a functional basis.

In a physical capacities evaluation, Dr. Shultz reported that plaintiff is incapable of working six to eight hours per day at a job requiring periods of standing and walking, nor did he have the capacity to sit six to eight hours per day (with adequate rest periods). Dr. Shultz further indicated that plaintiff was unable to bend or stoop, could not use his feet for operating controls, and could only lift up to ten pounds frequently. Additionally, he could not climb stairs or ladders and could not push and pull, but could reach above shoulder level and could use his hands and arms for both gross and fine manipulations.

Richard B. Erickson, a vocational expert, testified regarding Mr. Debolt's physical limitations at the supplementary hearing, at the request of the Department of Health, Education, and Welfare. He studied all of the documentary evidence of record and was present throughout the hearing. The vocational expert was of the opinion that a person of plaintiff's age, education, and vocational background, with the limitations described by Dr. Jay, would not have the functional capacity to engage in any of plaintiff's previous occupations. Nor would such an individual have the functional capacity to engage in any other occupation existing in the national economy, of which the vocational expert was aware.

In September of 1976, plaintiff traveled to Pittsburgh, Pennsylvania, for surgical treatment of his tic douloureux and further tests relating to his back problem. The results of these tests and plaintiff's diagnosis will be mentioned later.

Since plaintiff injured his back in December of 1973, he has been examined and treated by at least three chiropractors. Dr. Donald H. Woeltjen treated plaintiff from December 7, 1973 until November 19, 1974, diagnosed his condition as an acute lumbosacral strain and sprain, and stated that plaintiff was unable to work during the course of his treatment.

In a letter dated March 18, 1975, Dr. Edward Douglas indicated that he had been treating plaintiff since December 9, 1974, and that he felt that plaintiff was experiencing nerve root irritation at the L5 level, and possibly the L4 level, due to early spondylosis. He further stated that in his opinion plaintiff was totally disabled during the time he rendered treatment, and that "it is undetermined as to when he will be able to work."

Dr. Randall C. Litwiller, another chiropractor, reported in a letter dated April 30, 1975, that he had been treating plaintiff since April 13, 1974. In Dr. Litwiller's opinion, plaintiff was totally disabled while under his care.

During the period from October 7, 1974 through December 15, 1975, plaintiff was treated for a dermatological condition by Dr. C. E. Radcliffe, a professor at the University of Iowa. Dr. Radcliffe stated that throughout this period, plaintiff was "disabled" due to his dermatological condition.

## ADMINISTRATIVE CONSIDERATION OF THE EVIDENCE AND CONCLUSIONS

As previously noted, the A.L.J. found that plaintiff's back injury constitutes a "physical impairment" which has reached a level of severity so as to prevent him from engaging in substantial gainful activity. The Appeals Council, in its decision of June 6, 1977, rejected this finding, purportedly on the basis of new evidence submitted by plaintiff. The new evidence consists of hospital records and medical reports by Dr. Robert H. Wilkins, an Associate Professor of Neurological Surgery at the University of Pittsburgh School of Medicine, who examined and treated plaintiff.

This new evidence shows that plaintiff was admitted to Presbyterian University Hospital on September 7, 1976, for neurological services relating to his left-sided facial pain.[6] Dr. Wilkins indicated that "[T]here was historical and physical evidence to suggest a ruptured lumbar intervertebral disc." While hospitalized, he underwent further tests to determine the etiology of his back complaints. X-rays of the lumbar region revealed a mild scoliosis, but were otherwise unremarkable. Plaintiff also consented to have a myelogram performed, despite the fact that he had repeatedly refused to undergo such a procedure earlier, even though it had been recommended by a number of physicians. The lumbar myelogram revealed a ventral bulging of the L4–5 intervertebral disc.

■ The plaintiff chose not to undergo back surgery at that time, although Dr. Wilkins stated that there was evidence of degenerative disc disease at L4–5, and that without treatment the condition may continue to brother him periodically, causing leg and back pain. On this record the Appeals Council found that the record fails to indicate that plaintiff experienced a significant impairment arising from his back condition, or that he experienced a degree of pain which is functionally restrictive.[7] The new evidence available to the Appeals Council simply does not support its conclusion. Rather, the lumbar myelogram and most recent set of X-rays demonstrate that plaintiff does suffer from a "physical impairment" within the meaning of § 223(d)(3) of the Social Security Act. 42 U.S.C. § 423(d)(3). Certainly, both tests are medically acceptable clinical and diagnostic techniques and show that plaintiff's impairment results from an anatomical or physiological abnormality. It is very clear that the evidence in the record discloses a significant physical impairment, and there is simply no substantial evidence to support the defendant Secretary's finding to the contrary.

■ Insofar as plaintiff's dermatological condition is concerned, the conclusion that this condition does not constitute a "disability" is supported by substantial evidence. It is apparent that this condition did not prevent Mr. Debolt from working prior to the date of his back injury, although he had such a condition since at least 1969. This conclusion is buttressed by the fact that Dr. Radcliffe has imposed no restrictions on plaintiff's activities by reason of the dermatological condition.

There is also substantial evidence in the record to support the Secretary's finding that plaintiff's tic douloureux does not rise to the level of a disability. Although that condition was undoubtedly painful, there is no evidence in the record to indicate that it

---

**6.** On September 9, 1976, Dr. Wilkins performed a left retromastoid craniectomy, at which time the fifth nerve was found to be impinged. The operation was considered a success, and plaintiff was found to be free of his facial pain at the time of his discharge on September 21, 1976.

**7.** It is quite likely that the Appeals Council placed undue emphasis on a statement contained in plaintiff's discharge summary, that: "Because of the minimal discomfort the patient experienced in his left leg, desire not to undergo surgery for the probable disck [sic] at this time and to return at a future date if surgery was [sic] such desired." It is unclear from the record who made this statement, or even whether it was made by someone familiar with Mr. Debolt's condition. Moreover, it is doubtful that the statement was intended to express an opinion about the severity of plaintiff's back impairment.

was sufficiently incapacitating to meet the "disability" requirement of the Social Security Act. Furthermore, the surgery appears to have eliminated plaintiff's facial pain.

■ Having established the existence of one clear physical impairment, however, the question remains whether such impairment constitutes a "disability" within the meaning of the Act. 42 U.S.C. § 423(d)(1)(A). The A.L.J. found that plaintiff's "impairments have reached the level of severity which would prevent him from engaging in substantial gainful activity." That finding is clearly justified on the record here, as previously summarized.

Dr. Jay was of the opinion that as of the date of his examination, May 15, 1976, plaintiff was unable to perform any physical work whatsoever. At the request of the Department of Health, Education, and Welfare, plaintiff was examined on June 11, 1976 by Dr. Gordon Shultz, who felt that plaintiff was totally disabled on an organic basis.

■ The defendant argues that the statements of a physician that an individual is, or is not, "disabled" is not dispositive of the question. That proposition is quite clearly correct; this determination is to be made by the Secretary, in light of all the facts in the case. 20 C.F.R. § 404.1502(a)(1976). Nevertheless, the opinion of an examining physician that the claimant is totally disabled, though phrased as an ultimate conclusion on the question presented to the Secretary, is entitled to consideration as an indication of how severe the patient's impairment was at the time of the examination. *Allen v. Weinberger*, 552 F.2d 781 (7th Cir. 1977).

■ The weight to be given to such statements, however, depends upon the extent to which they are supported by clinical findings and are consistent with the other evidence in the case. 20 C.F.R. § 404.1526 (1976). In the instant case, the statement of Dr. Shultz is entitled to considerable weight. Dr. Shultz personally examined plaintiff at the request of the Department of Health, Education, and Welfare. His opinion is amply supported by his personal observations and the results of several tests he performed on plaintiff. Moreover, his findings and opinion are consistent with those of Dr. Donegan and Dr. Jay, who examined plaintiff less than a month earlier. Accordingly, Dr. Jay's statement that plaintiff was unable to perform any physical work is also entitled to considerable weight. These medical opinions are also consistent with the opinions expressed by each of the three chiropractors who treated plaintiff.

The finding of the A.L.J. that plaintiff is unable to engage in any substantial gainful activity is consistent with the physical capacities evaluation of Dr. Shultz and the limitations expressed by Dr. Jay. This finding is also consistent with the testimony of Richard B. Erickson, the vocational expert who testified at the request of the Department of Health, Education, and Welfare. Mr. Erickson was of the opinion that a person of the plaintiff's age, education, and vocational background, and with the same physical limitations, would not have the functional capacity to engage in any of the occupations known to exist in the national economy.

Thus, on the basis of the record as a whole, plaintiff has sustained his burden of proving his inability to engage in any substantial gainful activity by reason of a medically determinable physical impairment, and there is simply no substantial evidence to support a contrary conclusion. 42 U.S.C. § 423(d)(1)(A).

However, in order to constitute a "disability" within the meaning of the Social Security Act, plaintiff's inability to engage in any substantial gainful activity must have lasted, or be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If plaintiff's inability to engage in substantial gainful activity meets the twelve-month continuous duration requirement, he has then satisfied the "disability" requirement of the Social Security Act and is entitled to disability insurance benefits, commencing at the appropriate time.

The A.L.J. found that plaintiff failed to prove that he met the duration requirement, although he found plaintiff unable to engage in substantial gainful activity as of October 26, 1976, the date of his recommended decision. There does not appear to be sufficient evidence in the record to determine when plaintiff's impairment reached the severity required by the Act. Nor is there sufficient evidence on whether the impairment could be expected to last for a continuous period of twelve months thereafter, especially in view of the refusal of possible corrective surgery. Thus, on the basis of the present record, this court is simply not able to determine whether plaintiff has met the duration requirement.

Obviously more than a year has passed since the A.L.J. rendered his decision. Since that time plaintiff's condition may or may not have changed significantly. Thus, if the matter is remanded to the defendant Secretary, further proceedings can be conducted to determine at what time plaintiff became "disabled," and whether the duration requirement has been met.

The defendant Secretary points out here that plaintiff's decision not to undergo corrective surgery while hospitalized should bar his claim to benefits. An individual who willfully fails to follow prescribed treatment cannot be found to be under a disability. 20 C.F.R. § 404.1507 (1976). Whether plaintiff's decision not to have surgery should disqualify him from receiving benefits is an issue which was not addressed in the administrative proceedings and it also requires consideration upon remand.

Accordingly, IT IS ORDERED that the decision of the defendant Secretary is hereby REVERSED and the cause is REMANDED for further administrative proceedings consistent with this opinion.